*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DAVIS, Minors.

UNPUBLISHED
July 14, 2026
11:34 AM

No. 376273
Ingham Circuit Court
Family Division
LC Nos. 23-000720-NA,
23-000721-NA, and
23-000722-NA

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to three minor children under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (g). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In September 2023, petitioner, the Department of Health and Human Services, filed a petition seeking removal of the children and termination of respondent's parental rights. Petitioner alleged that one of respondent's children had tested positive for tetrahydrocannabinol (THC)[1] at birth and that respondent had burned down her house due to mental illness. Respondent entered a plea of admission to the allegations in the petition. Based upon her plea and testimony from a caseworker, the trial court found statutory grounds for jurisdiction and exercised jurisdiction over the children.

---

[1] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana. See Stedman's Medical Dictionary (26th ed), p 1791." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

The plan was later changed from termination to reunification, and the trial court adopted a case service plan that required respondent to address her issues with mental health, substance use, interpersonal communication, housing, and employment. As part of this plan, the trial court ordered respondent to stop using marijuana because her doctors indicated that it interfered with her psychiatric medication. Although respondent generally participated in services, her caseworker testified that she failed to demonstrate a sustained benefit. Eventually, a supplemental petition was filed seeking termination of respondent's parental rights. At trial, multiple caseworkers and service providers stated that respondent had been aggressive and threatening to them. Respondent admitted that she gets "triggered" when things feel unfair. Moreover, respondent consistently tested positive for THC until shortly before the termination trial. At that time, she was eight months pregnant with another child. Following the termination hearing, the trial court found statutory grounds to terminate her parental rights under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*), and MCL 712A.19b(3)(g). The court also found that termination of respondent's parental rights was in the children's best interests.

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in her children's best interests. "We review for clear error a trial court's factual finding that termination of a parent's parental rights is in the child's best interests." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

### B. ANALYSIS

Trial courts should weigh all available evidence to determine what is in the children's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). At the best-interests stage, the focus is on the child, not the parents. *In re Atchley*, 341 Mich App at 346. The court may consider the following factors:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714.]

Here, the record reflects that respondent had a bond with each of her children. However, her inconsistent participation in services and ongoing mental-health issues prevented her from providing the children with the care that they needed. Two of the children had mental-health issues stemming from trauma sustained in respondent's care, and the youngest child had been diagnosed with autism. The children's needs—including their mental-health needs—were being met by their foster parents, they were bonded with their foster parents, and their foster parents were willing to adopt them. The court noted repeatedly that each child needed permanency, stability, and finality. Respondent could not meet those needs. She was rude and combative with the caseworkers, law-enforcement had to be called in response to her behavior, and respondent consistently tested

positive for marijuana even though it negatively impacted her psychiatric medications. Indeed, respondent admitted that she was "triggered" whenever she was "cut off" or "treated unfairly." Her psychologist testified that respondent's mental-health disorder meant that respondent had a "low tolerance for frustration," which would cause her to "lash out" at others, including children. Respondent's "triggers" were demonstrated by her being threatening or aggressive with her caseworkers and service providers. As such, her ability to parent the children was negatively impacted. And, despite being offered services to address those issues, respondent participated inconsistently in the services offered. Considering the entirety of the record, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin